UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 07-62855-aer13 |
| JESSICA DIANE ADDISON and | ) |
| CHRISTOPHER MARK ADDISON, | ) MEMORANDUM OPINION |
| | ) |
| Debtors. | ) |

Keith Hayes represents Jessica and Christopher Addison, the Chapter 13 debtors herein (Debtors). This matter comes before the court upon Mr. Hayes' application for fees. Resolution of the matter emphasizes the need for an attorney's compliance with the disclosure requirements of the Bankruptcy Code and Rules. In at least two other cases before this court, Mr. Hayes has disregarded these requirements. Since this pattern is relevant to the present disposition, the two cases (In re Abrego and In re Reich) are discussed below.

Abrego:

On January 5, 2007, Ludibina Abrego filed a Chapter 13 petition through Mr. Hayes (Case # 07-60034-aer13). Mr. Hayes' disclosure of compensation on Local Bankruptcy Form (LBF) 1305 was filed the same day.

MEMORANDUM OPINION-1

In it he requested a flat fee of $4,000 for the entire case (except for appeals or adversary proceedings).[1] The form indicated he had received $0 before the petition's filing. Although the form requires it, Mr. Hayes did not indicate whether he had entered into a written employment agreement with Ms Abrego. As discussed below, although Ms Abrego had legal insurance through her employer which covered part or all of Mr. Hayes' services, LBF 1305 did not indicate such insurance.

On February 1, 2007, Ms Abrego filed her Chapter 13 plan. Contrary to LBF 1305, the plan indicated $750 of fees had been paid. At the initial confirmation hearing, Ms Abrego requested time to file a modified plan. On April 5, 2007, she filed a modified plan dated March 12, 2007, which again indicated $750 in fees had been paid.[2] The modified plan was confirmed on June 28, 2007. The confirmation order awarded $4,000 in fees. It indicated $750 had previously been paid, leaving $3,250 to be paid through the plan.

On November 1, 2007, the court received a letter from Ms Abrego advising that when she initially consulted Mr. Hayes, she had employer-sponsored legal insurance with "ARAG," and that Mr. Hayes was a participating attorney under the policy. She stated that the insurance

---

[1] In this District all Chapter 13 debtor's attorneys must file LBF 1305 which is entitled "Debtor's Attorney's Disclosure of Compensation and Any Employment Agreement, and Application for Compensation under 11 USC § 329 and FRBP 2016(b)." The form allows debtor's counsel to pick Schedule 1 indicating a flat fee for the entire case, or Schedule 2 indicating either a flat fee or an estimated hourly fee, through plan confirmation and the initial claims audit. Under Schedule 2, the attorney must request post-confirmation fees (beyond the initial claims audit) through a supplemental fee application.

[2] The original and modified plans at ¶ 2(b)(4) stated "Original attorney fees are $4,000; of which $3,250.00 remains unpaid."

MEMORANDUM OPINION-2

should have paid Mr. Hayes' fees in full, but that Mr. Hayes had not yet submitted a claim to ARAG despite her request to do so. She objected to the $4,000 in fees noted in the modified plan. She attached a letter she had written to Mr. Hayes dated September 20, 2007, stating Mr. Hayes never discussed his fee for representing her in the Chapter 13, and that she did not ask because she presumed it would be covered by her legal insurance.

On December 4, 2007, a hearing was held regarding Ms Abrego's letter. Mr. Hayes appeared by phone and did not put on any evidence. He represented to the court that legal insurance would only pay $750 of his fee and that a claim to ARAG was not to be filed until the case was completed. He further represented that insurance would not pay anything past confirmation. He did not produce a copy of his fee agreement with Ms Abrego or his agreement with ARAG. Ms Abrego appeared and represented that she believed her insurance fully covered Mr. Hayes' fees. Based on Mr. Hayes' failure to disclose his arrangement with ARAG and his misleading "flat fee" of $4,000,[3] the court entered an order on December 20, 2007, requiring Mr. Hayes to disgorge $2,037.76 to the Chapter 13 trustee (trustee) by January 4, 2008. This sum represented all the fees the trustee had paid Mr. Hayes. The court further ordered that should the case be dismissed, the fees were to be refunded to Ms Abrego.[4]

---

[3] By his own representations, Mr. Hayes' fees at best were capped at $750 through confirmation.

[4] The December 20th order also allowed Mr. Hayes to withdraw from representing Ms Abrego.

MEMORANDUM OPINION-3

Reich:

On October 13, 2007, Steven and Rebecca Reich filed a Chapter 13 petition through Mr. Hayes (Case # 07-62872-aer13). Mr. Hayes filed LBF 1305 on November 10, 2007. It indicated he had entered into a written employment agreement with the Reichs, which was attached thereto. In fact, the agreement was not attached. Like Abrego, LBF 1305 indicated $4,000 in total compensation requested, representing all compensation for the life of the case. It indicated Mr. Hayes had received $1,100 at or before the petition's filing, leaving a balance of $2,900 to be paid through the plan as funds were available. Mr. Hayes left blank the date on the form indicating service on the Reichs, trustee and United States Trustee (UST). Like Ms Abrego, the Reichs were covered by ARAG insurance, yet LBF 1305 did not disclose it. The Reichs' amended plan dated November 5, 2007, was filed on November 13, 2007. It provided in ¶ 2(b)(4) for original attorney fees of $ 4,000, of which $2,900 remained unpaid. The fees were to be paid prior to all creditors.

At the initial confirmation hearing on December 18, 2007, the Reichs requested time to file a modified plan. At the hearing, Mr. Hayes represented that the case involved legal insurance. The court adjourned the confirmation hearing to January 16, 2008, along with a specially-set evidentiary hearing on Mr. Hayes' fees.

At the January 16th hearing, Mr. Hayes requested time to file a modified plan to deal with fee issues and the IRS' objection to confirmation. Again, Mr. Hayes produced neither his employment agreement with the Reichs nor his agreement with ARAG. The UST appeared and agreed to the continuance.

MEMORANDUM OPINION-4

In anticipation of the adjourned hearing, the UST filed a memorandum, attaching a stipulation between it and Mr. Hayes. The stipulation provided that: 1) the Reichs had legal insurance with ARAG that covered them up through confirmation for a $1,100 flat fee which ARAG would pay; 2) as of the date of the stipulation,[5] Mr. Hayes had not sought or been paid the $1,100 or any compensation from the Reichs; and 3) the insurance contract obligated Mr. Hayes to provide the Reichs a 25% discount for post-confirmation services.[6]

The adjourned hearing was held on February 28, 2008. Mr. Hayes did not appear, instead leaving a message on the court's chambers' phone shortly beforehand that he was ill and would not be attending.[7] The trustee appeared and noted the plan before the court was not feasible, and that no modified plan had been filed. Based on his failure to appear and his disclosure deficiencies, in particular his failure to properly disclose his arrangement with ARAG, to provide the court and interested parties a copy of his fee agreement with the Reichs and the applicable terms of his agreement with ARAG, an order was entered on March 3, 2008 denying Mr. Hayes any fees in the case. On that same date a separate order was entered dismissing the case.

/ / / / /

---

[5] The stipulation is undated. It was entered into sometime between January 16, 2008 (the prior hearing date) and February 25, 2008 (the date the UST's memorandum was filed).

[6] In light of the stipulation, LBF 1305's $4,000 flat fee is troubling. Further, as the UST points out (and as Abrego and the case at bar confirm), $4,000 is Mr. Hayes' usual flat fee; it does not reflect the 25% discount he was obligated to give the Reichs for post confirmation services.

[7] Mr. Hayes however did not request a continuance, even orally.

MEMORANDUM OPINION-5

<u>The Case at Bar</u>:

On October 11, 2007, Debtors filed their Chapter 13 petition as a skeletal filing through Mr. Hayes. Follow-up schedules as well as LBF 1305 were filed on November 10, 2007. LBF 1305 was identical to the one filed in <u>Reich</u>, that is, it disclosed Mr. Hayes entered into a written employment agreement with Debtors which was attached, when in fact it was not attached. It further disclosed a flat fee of $4,000 for the entire case with $1,100 paid, leaving $2,900 to be paid through the plan. Mr. Hayes did not fill in the service date. Debtors' plan dated October 23, 2007, was also filed on November 10, 2007. Contrary to LBF 1305, plan ¶ 2(b)(4) indicated original attorney's fees of $1,100, which had been paid. It then noted "ARAG legal insurance will pay fees."

On December 16, 2007, Mr. Hayes filed an amended LBF 1305, again indicating an employment agreement reached and attached, yet none was attached.[8] On this version, Mr. Hayes chose Schedule 2, indicating a flat fee of $1,100 through confirmation and the initial claims audit. He left blank the space in Schedule 2 disclosing fees paid to date and the remainder that needed to be paid through the plan.

The confirmation hearing was held on December 18, 2007. Although there were no objections to confirmation, the trustee questioned Mr. Hayes' fees because of the legal insurance, at which point confirmation was set over to January 16, 2008, along with a specially-set evidentiary hearing on Mr. Hayes' fees. The fee issues were to be tracked with those in <u>Reich</u>.

---

[8] The court surmises Mr. Hayes filed amended LBF 1305 based on the concerns expressed by the court in <u>Abrego</u>.

MEMORANDUM OPINION-6

Mr. Hayes as well as the UST appeared at the January 16th hearing. As in Reich, Mr. Hayes adduced neither his agreement with Debtors nor his agreement with ARAG. He did, however, advise that he would be filing a further amended LBF 1305 to correct any prior deficiencies, while attaching thereto his fee agreement with Debtors, along with the relevant terms of the ARAG contract. The UST requested a setover to allow it more time to investigate Mr. Hayes' relationship with ARAG. The court noted several of the disclosure deficiencies discussed below. It queried whether Mr. Hayes explained the ARAG policy's fee limitations to Debtors. Debtors' plan was confirmed, with resolution of the fees deferred to a continued hearing set for February 28, 2008.

In anticipation of the February 28th hearing, the UST filed a memorandum which attached a stipulation with Mr. Hayes identical to the one filed in Reich. As noted above, Mr. Hayes did not appear at the February 28th hearing.

On March 23, 2008, while his fee application was under advisement, Mr. Hayes filed a second amended LBF 1305 disclosing a flat fee of $1,100 through confirmation and the initial claims audit, with the notation "ARAG will pay $1,100.00 on confirmation and approval by Court. 25% discount on any post-conf. fees." For the third time in the case, Mr. Hayes failed to attach his fee agreement while stating it was attached.

Discussion:

The disclosure requirements for debtor's counsel under the Bankruptcy Code and Rules are well established and were summarized recently by this court:

MEMORANDUM OPINION-7

> Debtors' attorneys are . . . subject to the requirements of § 329, which requires that any attorney representing a debtor file "a statement of the compensation paid or agreed to be paid" for bankruptcy services, if any payment or agreement was made within a year before bankruptcy, and "the source of such compensation." § 329(a). Counsel must file this statement whether or not the attorney applies to the court for compensation. Rule 2016 implements this requirement, and provides that counsel for a debtor must file, within 15 days of the order for relief, the statement required by § 329. Fed. R. Bankr.P. 2016(b).
>
> In disclosing the fee arrangement, "the applicant must disclose 'the precise nature of the fee arrangement,' and not simply identify the ultimate owner of the funds." *In re Park-Helena Corp.,* 63 F.3d 877, 881 (9th Cir.1995). An applicant must lay bare all its dealings . . . regarding compensation . . . . [The] fee revelations must be direct and comprehensive. Coy, or incomplete disclosures . . . are not sufficient. *Id.* (quoting *In re Saturley,* 131 B.R. 509, 516-517 (Bankr. D. Me.1991)).

In re Farrington, 2008 WL 4365753, *4 (Bankr. D. Or. 2007).

The disclosure requirements allow oversight of fee arrangements between debtors and their counsel. "Section 329(a) seeks to prevent overreaching by debtor's attorneys and serves to counteract the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure." In Re Perrine, 369 B.R. 571, 579-580 (Bankr. C.D. Cal. 2007) (internal quotations omitted).

> The disclosure rules are literally applied, and "[n]egligent or inadvertent omissions 'do not vitiate the failure to disclose.'" *Park Helena Corp.,* 63 F.3d at 881 (quoting *In re Maui 14K, Ltd .,* 133 B.R. 657, 660 (Bankr. D. Haw. 1991)). Failure to comply with the disclosure rules is sanctionable, "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Id.* at 880.

MEMORANDUM OPINION-8

Farrington, supra at 2008 WL 4365753, *5. It is no excuse that the attorney receives some or all of the fees from a third party, here ARAG. In Re Williams, __ B.R. __, 2007 WL 5006517 (Bankr. N.D. Oh. 2007) (fees received from third parties are equally subject to the disclosure rules).

Here, Mr. Hayes has woefully failed in his duty to disclose. His original LBF 1305 was inaccurate in that it did not attach the fee agreement with Debtors, did not mention ARAG insurance, and provided for a $4,000 flat fee, when the actual fee was $1,100 through confirmation. It also did not disclose the 25% post-confirmation discount Mr. Hayes was obligated to extend to Debtors. While the plan, as opposed to LBF 1305, did disclose attorney's fees of $1,100, which "ARAG legal insurance will pay," this does not vitiate Mr. Hayes' lapses. Interested parties and the court should not have to look to a separate document to determine the nature of an attorney's fee arrangement. All pertinent information should be set forth on LBF 1305. C.f., Hale v. United States Trustee (In Re Basham), 208 B.R. 926, 931 (9th Cir. BAP 1997), aff'd, 152 F.3d 924 (9th Cir. 1998) (unpublished) (fee disclosures in statement of affairs did not excuse late filing of separate attorney compensation statement required under § 329(a) and FRBP 2016(b)). Further, the plan also fails to mention the 25% post-confirmation discount.

Mr. Hayes' failures continued with the amended LBF 1305, which again does not have attached a copy of the employment agreement, although the form says it does, and again fails to mention the ARAG insurance, including the 25% post-confirmation discount. The second amended LBF 1305 filed three months later, completes a trilogy of failure to attach

the employment agreement.[9] Although it finally discloses the material terms of the arrangement with ARAG, by that time it was an empty gesture rather than a good faith attempt to comply with disclosure requirements.[10]

The UST has recommended disallowance of the $1,100 pre-confirmation fee to be paid by ARAG. In addition, it recommends that any applications for supplemental compensation be supported by time records and documentation that show Mr. Hayes is billing his time at 75% of his customary rate for similar matters.

Were Mr. Hayes' failure to disclose an isolated instance, the court might be disposed to follow the UST's recommendation, however, as recounted above, Mr. Hayes has exhibited a pattern of disdain for disclosure requirements in this case and in Abrego and Reich, all involving legal insurance. Of note, in none of these cases did he produce a copy of the employment agreement with his clients or a copy of the agreement with ARAG. Despite the court's stated concern, in none of the cases did he adduce any evidence that his clients understood the terms of his agreement with ARAG. In none of the cases did he bring the various disclosure deficiencies to the court's attention. Rather, it took a complaining client (Abrego) or inquiry from the court and an investigation by the UST (Reich and Addison) to bring them to light.

---

[9] This failure is itself sufficient to deny fees. In re Hanson, 223 B.R. 775, 781 (Bankr. D. Or. 1998).

[10] Mr. Hayes filed the second amended LBF 1305 more than five months after the Chapter 13 petition, more than two months after advising the court he would be filing it, and almost one month after the February 28th evidentiary hearing where he failed to appear, and after which the matter was taken under advisement.

MEMORANDUM OPINION-10

Once brought to light, Mr. Hayes' efforts at remedying the deficiencies were dilatory and incomplete. Under Farrington, supra (and the authority cited therein), sanctions can be imposed even for negligent and inadvertent non-disclosures. Here, Mr. Hayes' conduct, if not willful, is at least grossly negligent. As such, sanctions are warranted. Mr. Hayes will be denied all fees for this entire case. Further, if he seeks to withdraw from representing Debtors, the court reserves the right to condition withdrawal on the indemnification of Debtors for any reasonable fees they may incur in securing substitute counsel.

This opinion constitutes the court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated. An order consistent herewith shall be entered.

*albert E. Radcliffe*

ALBERT E. RADCLIFFE
Bankruptcy Judge